Bert Briones (SBN 237594)
**RED HILL LAW GROUP**
15615 Alton Parkway, Suite 210
Irvine, California 92618
Telephone: (714) 733-4455
Facsimile: (714) 733-4450
bb@redhilllawgroup.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>CAMMY LYNN MENDES,<br><br><br><br>Debtor. | Case No. 8:25-bk-11756-SC<br><br>Chapter 7<br><br>OPPOSITION TO OBJECTION TO CLAIMED EXEMPTION IN REAL PROPERTY<br><br><br>Hearing:<br>Date:    September 2, 2025<br>Time:    11:00 a.m.<br>Crtm:   ZoomGov; 5C, 411 W Fourth St., Santa Ana, CA 92701 |

Debtor Cammy Lynn Mendes ("Debtor") files this Opposition to the Objection to Claimed Exemption in Real Property ("Objection") filed by Gregg Roberts ("Roberts"). Roberts seeks to enforce a judgment originally obtained by Carual, Inc., which was transferred to Roberts.  Roberts submitted no evidence in support of his Objection and no evidence exits.  He alleges, without any declaration or documentation, that Debtor obtained equity in her residence by using funds obtained through fraud or any other wrongful conduct. Roberts, however, fails to set forth a single fact in the Objection that evidences any wrongful

1 | conduct by Debtor.  On that basis, the Objection must be overruled.

2 | **I.     FACTS**

3 | In 2004, Ray Mendes ("Ray"), Debtor's spouse, purchased the residence located at

4 | 503 Traverse Drive, Costa Mesa, California 92626 ("Residence").  Ray paid $475,000 with

5 | 10% down.  In 2019, Ray conveyed the Residence to himself and Debtor as joint tenants.

6 | Ray and Debtor refinanced the Residence.  The balance on the mortgage is currently

7 | approximately $554,000.

8 | In 2018, Debtor and Ray, through their business entity, 14th Century Clubhouse, Inc.,

9 | purchased a Pump It Up franchise (indoor kids' bounce house) from Carual, Inc. Under the

10 | terms of the purchase, 14th Century agreed to pay $248,000 to Carual with an initial $25,000

11 | down.  Carual carried back a note in the sum of $223,000, which was personally guaranteed

12 | by Debtor and Ray.  14th Century was required to pay $2,000 monthly payments, then a

13 | subsequent $25,000 down and $1,500 interest-only payments.  (Declaration of Cammy

14 | Mendes ("Debtor Decl."), ¶ 4.)  14th Century paid the $25,000 down payment and required

15 | monthly payments through November 2019.

16 | Debtor and Ray used any money that Pump It Up earned to put back into the business

17 | and develop it.  Debtor's Pump It Up franchise struggled financially and ultimately failed

18 | due to Covid-mandated closures and restrictions. (Debtor Decl., ¶ 5.)  On July 1, 2020,

19 | Carual sued 14th Century, Debtor and Ray for breach of contract, breach of personal

20 | guaranty, and foreclosure.  The Complaint did not include any allegations of fraudulent or

21 | intentionally wrongful conduct by Debtor.  (*Id.*, ¶ 6.)  The claims were based solely on non-

22 | payment of the note and guaranty.  A true and correct copy of the Complaint is attached to

23 | the Debtor Declaration at ¶ 1.  Carual, Inc. obtained a judgment in 2022 in the sum of

24 | $279,884.10.  On September 8, 2022, Carual, Inc. recorded an abstract of the judgment.

25 | Carual, Inc. thereafter transferred the judgment to Roberts.  It appears that Roberts is in the

26 | business of purchasing judgments.  *See* https://legalsupport-sc.com/index.html.  On June 14,

27 | 2023, Roberts recorded an abstract of judgment against Debtor.

28 | / / /

## II.    ARGUMENT

The burden of proof and persuasion to succeed on an objection to a claim of exemption rests on the objecting party. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). The *Carter* court stated:

> ***The objecting party must produce evidence to rebut the presumptively valid exemption.*** If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. *See In re Moneer*, 188 B.R. 25, 28 (Bankr.N.D. Ill. 1995); Fed.R.Evid. 301. ***The burden of persuasion, however, always remains with the objecting party.***

(Emphasis added.)

Here, Roberts produced no evidence—not a single declaration or document—in support of his Objection. On that basis alone, the Objection must be denied.

However, even if Roberts had produced a declaration, there is no valid evidence to support an objection to Debtor's homestead exemption.

Roberts cites to *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 471–72 (1989) for the proposition that "California courts similarly recognize that homestead exemptions do not shield property interests arising from fraud or wrongful acts." (Objection, 4:8-10; *see Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 471–72 (1989). A careful review of the *Price* case, however, reveals that it says nothing about homestead exemptions or any other exemptions. Perhaps Roberts should have cited to *Green v. Weinstein (In re Green)*, No. NV-16-1080-JuKuL, 2017 Bankr. LEXIS 671 (B.A.P. 9th Cir. Mar. 10, 2017) or *Maki v. Chong*, 119 Nev. 390, 75 P.3d 376 (2003), which state:

> An individual using fraudulently obtained funds to purchase real property should not be protected by the homestead exemption because the exemption's purpose is to provide protection to individuals who file the homestead exemption in good faith.

Although Roberts failed to cite case law to support his proposition, the proposition is

correct but inapplicable here.  The evidence before the Court, including the Complaint filed by Carual, initial judgment creditor who obtained the judgment against Debtor, indicates that the judgment arose out of breach of a loan agreement based on Debtor's business's failure to pay.  The judgment creditor did not even allege any wrongful conduct or wrongful use of funds by Debtor or her business.  There is no evidence of any wrongful conduct.  Indeed, Debtor did nothing wrong—her business simply did not succeed and she had no income to pay the note and guaranty.  The Court should therefore deny Roberts' Objection and allow Debtor a fresh start with the protection of her homestead exemption.

## III.    CONCLUSION

Roberts' Objection should be overruled because Roberts has provided no evidence, and no evidence exists, to support his allegation that the money owed under the judgment was obtained or used for fraudulent or wrongful purposes.

DATED: August 15, 2025                    RED HILL LAW GROUP


By:/s/    _Bert Briones_____
        BERT BRIONES attorney for DEBTOR
        CAMMY LYNN MENDES

## DECLARATION OF CAMMY LYNN MENDES

I, Cammy Lynn Mendes, declare:

1.      I am an individual over the age of 18.  I am the debtor in the above-captioned bankruptcy case.  I know the following facts to be true of my own personal knowledge.

2.      In 2004, Ray Mendes ("Ray"), my spouse, purchased the residence located at 503 Traverse Drive, Costa Mesa, California 92626 ("Residence").  Ray paid $475,000 with 10% down.  In 2019, Ray conveyed the Residence to himself and me as joint tenants.

3.      Ray and I refinanced the Residence.  The balance on the mortgage is currently approximately $554,000.

4.      In 2018, Ray and I, through our business entity, 14th Century Clubhouse, Inc., purchased a Pump It Up franchise (indoor kids' bounce house) from Carual, Inc. Under the terms of the purchase, 14th Century agreed to pay $248,000 to Carual with an initial $25,000 down.  Carual carried back a note in the sum of $223,000, which was personally guaranteed by Debtor and Ray.  14th Century was required to pay $2,000 monthly payments, then a subsequent $25,000 down and $1,500 interest-only payments.  14th Century paid the $25,000 down payment and required monthly payments through November 2019.

5.      Debtor and Ray used any money that Pump It Up earned to put back into the business and develop it.  The Pump It Up franchise struggled financially and ultimately failed due to Covid-mandated closures and restrictions.

6.      On July 1, 2020, Carual sued 14th Century, Debtor and Ray for breach of contract, breach of personal guaranty, and foreclosure.  A true and correct copy of the Complaint is attached as Exhibit 1 below.  The Complaint contains a copy of the note and guaranty entered between Carual, on the one hand, and 14th Century, Ray and me, on the other.

/ / /

/ / /

/ / /

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

7.      I am informed that Carual, Inc. obtained a judgment in 2022 in the sum of $279,884.10. On September 8, 2022, Carual, Inc. recorded an abstract of the judgment. Carual, Inc. thereafter transferred the judgment to Roberts. On June 14, 2023, Roberts recorded an abstract of judgment against me.

Dated:_____08/14/2025_____, at _____Costa Mesa_____, California

_Cammy Lynn Mendes_

_____
CAMMY LYNN MENDES

## DECLARATION VERIFYING SOFTWARE GENERATED SIGNATURE(S)

*(Attach this declaration immediately after the signature page of any document that is being Filed and that contains a Software Generated Signature, as those terms are defined in LBR 9011-1(b).)*

I, *(print name of declarant)* Bert Briones _____, declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would testify competently hereto. I am over 18 years of age.

2. I am an attorney admitted to practice in this district, or alternatively I am an attorney who has been granted leave to appear pro hac vice per LBR 2090-1.

3. As set forth in the table below, either–
    a. <u>Oral verification</u>: I have obtained oral verification from the following person(s), whose Software Generated Signature (as defined in LBR 9011-1(b)(4)(B)) appear(s) on the accompanying document, that the signer intended to sign this document electronically, or alternatively
    b. <u>Explanation</u>: I provide the following explanation why no such verification is provided (*e.g.,* that the signer is represented by a different attorney who will provide a separate declaration confirming their client's oral verification):

| | Name of signer | Date of oral* verification | -OR-   Explanation why no verification is provided |
|---|---|---|---|
| 1. | Cammy Lynn Mendes | 08/14/2025 | ☐ See explanation below. |
| 2. | | | ☐ See explanation below. |
| 3. | | | ☐ See explanation below. |
| 4. | | | ☐ See explanation below. |
| 5. | | | ☐ See explanation below. |

Explanation(s) *(if applicable)*:

☐ see attached continuation sheet

*<u>Verification must be oral</u>. For the avoidance of doubt, verification must be oral, and any written verification is insufficient even if it includes a purported holographic signature, so as to protect against persons who might have access to the hardware and software of the alleged signer and could use such access to create (A) false Software Generated Signatures and (B) false images of holographic signatures purporting to verify those electronic signatures.  *See* LBR 9011-1(b)(4)(B).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/14/2025 | Bert Briones | /s/ *Bert Briones* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

October 2024                              Page 1                    F 9011-1.SIGNATURE.VERIF.DEC

# EXHIBIT "1"

# EXHIBIT "1"

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

Case 8:25-bk-11556-SC Doc 10 Filed 08/14/25 Entered 08/14/25 18:04:33 Desc
Main Document Page 9 of 59

30-2020-01149885-CU-BC-CJC - ROA # 2 - DAVID YAMASAKI, Clerk of the Court By Omar Saldivar, Deputy Clerk.

1 | Jonathan R Preston (CBN 195197)
Law Office of Jonathan Preston
2 | Whitewood Road, Suite 104
Murrieta, CA 92563
3 | (951) 461-2500

4

5 | Attorney for Carual Inc.

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF ORANGE

10 | CARUAL, INC., a California Corporation

CASE NO: 30-2020-01149885-CU-BC-CJC

*Assigned to for all purposes:*

Judge Robert J. Moss

11 | Plaintiff,

12 | v.

COMPLAINT FOR:

13 | 14TH CENTURY CLUBHOUSE, INC., a California Corporation; CAMMY MENDES, an individual; RAY MENDES, an individual, and DOES 1 through 10, inclusive,

1. BREACH OF CONTRACT
2. BREACH OF PERSONAL GUARANTEE ON PROMISSORY NOTE
3. FORECLOSURE OF SECURITY AGREEMENT

14

15 | Defendants

16 | (Unlimited Jurisdiction – Amount exceeds $25,000.00)

17

18

19 | <u>GENERAL ALLEGATIONS</u>

20

21 | 1.  Plaintiff, CARUAL, INC., is and at all times herein mentioned, a corporation organized

22 | and existing under the laws of the state of California, and regularly conducts business with

23 | in the County of Orange, State of California.   Plaintiff, CARUAL, INC., entered into a

24 | contract, the terms of which were to be performed in the County of Orange, California and

25 | in the County of San Bernardino.

26 | 2.  Plaintiff is informed and believes and thereon alleges that defendant 14TH CENTURY

27 | CLUBHOUSE, INC. ("14TH CENTURY CLUBHOUSE, INC." or "defendant") is, and at

28 | all times herein mentioned was a corporation, organized and existing pursuant to the laws

COMPLAINT FOR DAMAGES

of the state of California, which does business in the County of Orange, State of California. Plaintiff is informed and believes and thereon alleges that defendant, RAY MENDES, is, and at all times herein mentioned was, an individual residing in the County of Orange, State of California, and is a principal owner of defendant 14TH CENTURY CLUBHOUSE, INC., which maintains its principal place of business in Orange, CA.

3. Plaintiff is informed and believes and thereon alleges that defendant CAMMY MENDES, is, and at all times herein mentioned was an individual residing in the County of Orange, State of California, and is a principal in the defendant corporation 14TH CENTURY CLUBHOUSE, INC.    Plaintiff is informed and believes that defendants RAY MENDES and CAMMY MENDES, are husband-and-wife, and shall hereinafter be referred to as MENDES.

4. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

5. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences and damages herein alleged, and that plaintiff's damages as herein alleged were approximately caused by defendants' acts or omissions. At all times mentioned herein, each of the defendants was the agent, alter ego and/or employee of each of the other defendants, and was, and at all times herein mentioned, acting within the scope of said agency, alter ego status and/or employment.

6. RAY MENDES and his wife, CAMMY MENDES, are the sole shareholders, officers and directors of 14TH CENTURY CLUBHOUSE, INC.    RAY MENDES and CAMMY MENDES, act as the general managers and CEO, CFO and corporate Secretary of 14TH CENTURY CLUBHOUSE, INC.    At all times herein mentioned, each of the above named defendants have been engaged in a common enterprise and have been controlled by the same person or group of persons who have shared the same common plan.  Defendants have operated their respective affairs in such a manner that their interests are the same and they have acted and coordinated in a unified manner, such that the respective interests are

COMPLAINT FOR DAMAGES

1    indistinguishable.  Each of the defendants hereinabove is the alter ego of each of the other

2    defendants named hereinabove, such that there may be, under law and equity, be treated as

3    one and the same, and each shall each be liable for the acts and omissions of each other.

7. Plaintiff is a corporation engaged in the business of operating a children and young adult

5    entertainment business known as "Pump it Up".   The business is established for the

6    purpose of operating as an inflatable style in-door play area for children, birthday party, and

7    special events center,  located in the County of Orange, State of California.

8. On or about July, 2018 plaintiff begin negotiations with defendants for the sale of the

9    Plaintiff's second location  of a "Pump it UP" business,  located at 11966 Jack Benny Dr.,

10    Suite's 109 through 114, Rancho Cucamonga, CA 91739.

9. As a result of the negotiations, plaintiff and defendant entered into a purchase and sale

12    agreement, on August 21, 2018 to allow defendant 14th CENTURY CLUBHOUSE, INC.

13    to purchase the Rancho Cucamonga location for the sum of $250,000.    A copy of the

14    original purchase and sale agreement, is attached hereto as Exhibit A.

10. Under the original terms of the purchase and sale agreement, plaintiff agreed to allow the

16    defendants to pay the sum of $50,000, as a down payment, and to enter into a one year

17    interest only loan in the amount of $200,000, wherein the interest only loan payments were

18    calculated at $1500 per month.   Under the terms of the agreement, the defendants were

19    required to pay off the remaining purchase price of $200,000, within one year close of

20    escrow.

11. Prior to close of escrow,  the purchase and sale agreement was amended to reduce the initial

22    down payment of $50,000 to $25,000, and to permit the Defendants to pay the additional

23    down payment of $25,000 within six months after close of escrow.  (May 16, 2018)   The

24    purchase price of the business was also reduced to $248,000.    The parties agreed to a seller

25    carry back promissory note was in the amount of $223,000,  which was to paid in the

26    amount of $2,000 per month for the first six months, and then provided that the additional

27    $25,000 down  payment was paid by May 16, 2018, would reduce to $1,500 per month

28    interest only.   In the event that the $25,000 additional down payment was not made, then

the interest only payment would increase to $2,500 per month.    Escrow formally closed on November 16, 2018.

12. The promissory note also allowed the defendants, as long as they were not in default of the note, to extend the maturity date for an additional six months, by continuing to pay the sum of $2000 per month or $2,500 per month, depending on the 2nd down payment of $25,000.00.

13. Beginning mid December, 2018, the Defendants began making interest only payments in accordance with the purchase and sale agreement and the first amendment to purchase and sale agreement.    The defendants made six monthly payments in the amount of $2,000 per month beginning December 2018 until May, 2019, and then began paying $2,500 per month starting June, 2019 until November 2019.   No further payments were made after November 2019.

14. CARUAL, INC., complied with and performed all of the terms of the above referenced agreements.  14TH CENTURY CLUBHOUSE, INC.,  CAMMY MENDES and RAY MENDES  breached the purchase and sale agreement by failing to pay off the remaining balance of $223,000, within one year of the close of escrow.  Due to the breach by 14TH CENTURY CLUBHOUSE, INC., and defendants MENDES, and each of them, CARUAL, INC., has been damaged in an amount to be proven at trial, but is no less than $223,000.00, plus pre-judgment interest, and attorney fees.

**FIRST CAUSE OF ACTION**

**(BREACH OF CONTRACT)**

**(AGAINST ALL DEFENDANTS)**

15.   Plaintiff incorporates herein the allegations of paragraphs 1 through 14 as though fully set forth herein.

16. As set forth hereinabove, on or about August 21, 2018, 14TH CENTURY CLUBHOUSE, INC., entered into the above referenced contract, Purchase and Sale Agreement (Exhibit A) and First Amendment to Purchase and Sale Agreement (Exhibit B)  with CARUAL, INC., for the purchase of the above referenced Pump it Up franchise, including all fixtures and equipment.   14TH CENTURY CLUBHOUSE, INC., and MENDES have failed to make payments under the terms of the contract, by failing to pay off the balance of the purchase price within one year of close of escrow.   Due to 14TH CENTURY CLUBHOUSE, INC.'s and MENDES'S  breach of the above referenced contract, specifically, their failure to pay the sums due under the note, CARUAL, INC., has been damaged in an amount to be proven at trial, but in no event less than $223,000.00.

17. Pursuant to the terms of the above referenced agreements, CARUAL, INC., is entitled to recover attorney's fees and costs expended in the enforcement of its rights under the terms of the contract.

## **SECOND CAUSE OF ACTION**
## **(BREACH OF PERSONAL GUARANTY)**
## **(AGAINST ALL DEFENDANTS AND DOES 1-10)**

18.  Plaintiff realleges and incorporates herein by this reference as though fully set forth herein the allegations of paragraphs 1 through 17.

19. On November 15, 2018, defendants and each of them executed a personal guarantee of secured promissory note, (exhibit C)  which by its terms guarantees payment of the secured promissory note (Exhibit D) in the amount of 223,000. The purpose of the personal guarantee on the secured promissory note, is to provide further consideration by the defendants to induce the plaintiffs to allow a carry back loan pursuant to the sale of the Pump It Up franchise located in Rancho Cucamonga.

COMPLAINT FOR DAMAGES

20. Defendants and each of them, breached the personal guarantee of secured promissory note by failing to pay off the promissory note within one year of the close of escrow, and by making no further such payments on the purchase of the franchise after November, 2019.

21. Wherefore, defendants and each of them both sum of $233,000, plus prejudgment interest and attorneys fees, from the date of breach, December, 2019.

//

### THIRD CAUSE OF ACTION
### (FORECLOSURE ON SECURITY)
### (AGAINST ALL DEFENDANTS AND DOES 1 -10)

22. Plaintiff realleges and incorporates herein by this reference as though fully set forth herein the allegations of paragraphs 1 through 14.

23. On or about  August 21, 2018 plaintiff CARUAL, INC., and defendant 14TH CENTURY CLUBHOUSE, INC., entered into a security agreement providing  security in the assets of the personal property of the Pump it UP business in the event of default.  In addition, the defendants executed a personal guarantee of secured promissory note agreement, which also assigned certain inventory as collateral for the payment of the note.   A true and correct copy of the security promissory note and security agreement  is attached hereto as Exhibit C and D respectively, and made a part of the complaint by reference.

24. As  a security for payment on the purchase and sale agreement, and first amendment to the purchase and sale agreement, and together with a personal guarantee  (Exhibit E), the defendants, and each them pledged as collateral,  all of the "debtor's ownership interest and all assets related thereto for the PUMP IT UP business located at 111966  Jack Benny Drive,  Suite 109-114,  Rancho Cucamonga,  CA  91739.

25.   In the event of a default of the  purchase and sale agreement and the first amendment, plaintiff would be entitled to resort to fulfillment of all obligations secured thereby, as well

1   as expenses reasonably incurred by plaintiff in any disposition thereof, should defendant

2   default in any way under the agreement.

3   26. Plaintiff has fully performed under the agreement. However on or about January 2020,

4   defendant 14TH CENTURY CLUBHOUSE, INC.,  RAY MENDES and CAMMY

5   MENDES defaulted on the agreement by failing to make any payments as required under

6   the agreement.   As a result, pursuant to the terms of the agreement, defendant's entire

7   obligation has become due, and there is now due, owing and unpaid from defendant the

8   principal sum of $223,000.00,  together with interest thereon from and after January 1,

9   2020, at the legal rate.   No part of that amount has been paid, although plaintiff has

10   demanded it from defendant.

11   27. Although not pursuant to the agreement, defendants have remained in possession of the

12   collateral subject to plaintiffs' security agreement.   As a further result of defendants'

13   default, plaintiffs are entitled to take immediate possession of the collateral described

14   therein, on which Plaintiffs were  given a security interest.

15   28. Defendants have remained to the present time in possession of the collateral subject to

16   plaintiffs' security interest.   As a result of defendants' default, plaintiffs are entitled to

17   enforce the security interest by judicial foreclosure of all the defendants' rights in the

18   "Pump it Up" franchise by the proper judicial officer or otherwise take possession thereof.

20   Wherefore, plaintiffs pray judgment as follows

22   1.   For damages in the sum of $233,000 plus pre-judgment interest.

23   2.  For interest from and after January 1, 2020, to the date of judgment at the legal rate.

24   3.   For possession of the collateral described above

25   4.  For costs of suit herein incurred, including reasonable attorney's fees as authorized by the

26   terms of the purchase and sale agreement and note.

27   5.  For such other and further relief as the court may deem proper.

COMPLAINT FOR DAMAGES

DATE:    06/25/2020

Law Office of Jonathan Preston

By: _____

Jonathan R. Preston,  Attorney for Plaintiffs

# EXHIBIT A

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

<u>PURCHASE AND SALE AGREEMENT</u>

THIS PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into by and between Carual, Inc., a California S corporation ("Seller") and Cammy Mendes and Ray Mendes ("Buyer"), on ___8|20___ 2018.

WITNESSETH:

WHEREAS, Seller, a California corporation authorized to conduct business in California, is engaged in the business of operating a children and young adult entertainment business known as "Pump It Up" located at 11966 Jack Benny Dr., Suites 109-114, Rancho Cucamonga, CA 91739 (the "Subject Business"); and

WHEREAS, the Seller, as owner of the Subject Business and all of the Operating Assets in the Subject Business (hereinafter called "Assets"), desires to sell Subject Business and all of the Assets utilized by the Seller in connection with the Subject Business to the Buyer, and the Buyer desires to purchase the Subject Business and all of the Assets from the Seller on the terms and conditions set forth herein below; and

NOW, THEREFORE, the Seller and the Buyer, in consideration of the mutual promises and covenants hereinafter set forth, do hereby promise and agree as follows:

<u>ARTICLE I.</u>

<u>Acquisition of Assets</u>

1.01   <u>Subject Business Assets.</u>   Subject to the terms and conditions set forth in this Agreement, the Seller agrees to sell to the Buyer and the Buyer agrees to purchase from the Seller the Operating Assets described below:

(a) All tangible assets of every kind and description owned or used in the operation of the Subject Business, including equipment, apparatus associated with operating the Subject Business (i.e. blow up items such as slides, and platforms, etc.), leasehold improvements, fixtures, furniture, decorative accessories, exterior and interior signage (hereinafter called "F, F&E" or "Assets"). The Assets are described in Exhibit "A" attached.

(b) Seller's existing License to operate a "Pump It Up" franchise.

Initials of Seller: _____                    Initials of Buyer: Rm Cm

SALE & PURCHASE AGREEMENT                          Page 1

## ARTICLE II.

### Purchase Price

2.01  Purchase Price. The purchase price for the Subject Business and Assets is Two Hundred Fifty Thousand Dollars ($250,000.00), (hereinafter called the "Purchase Price").

2.02  Payment of the Purchase Price.  The aggregate Purchase Price for the Subject Business and Assets shall be paid in the manner set forth as follows:

> (a) Buyer shall give Seller, through escrow, prior to the close of escrow, Fifty Thousand Dollars ($50,000.00) cash. The balance of the Purchase Price, which is Two Hundred Thousand Dollars ($200,000), shall be paid to Seller via a Seller Carry Back Loan as specified in Article VIII herein.

2.03  Payment from Escrow.  Escrow Holder/Agent shall disburse to Seller by wire transfer of immediately available funds, an amount equal to Fifty Thousand Dollars ($50,000.00) per the terms and condition specified in Article IV herein.

## ARTICLE III.

### Escrow Holder, Escrow Opening, Escrow Closing

3.01 Escrow Holder. Escrow will be placed with: Debbie Howe, The Heritage Escrow Company whose address is: 2550 Fifth Avenue, Suite 800 San Diego, CA 92103 and whose contact information is:  Phone: (619) 234-2010 Efax: (714) 481-2234 and email address is: dhowe@heritage-escrow.com or bulk.sale.team@heritage-escrow.com (hereinafter called "Escrow Holder"). Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community, governing regulations and any reporting requirements of the Internal Revenue Code.

3.02  Escrow Opening. The opening of escrow shall occur on the date the Agreement is mutually executed by Buyer and Seller. Immediately following the opening of escrow, Buyer shall deposit Twenty Five Thousand Dollars ($25,000.00) (hereinafter called "Deposit") with the Escrow Holder. The handling of said Deposit shall be subject to the terms and conditions set forth in this Agreement.

3.03  Escrow Closing. Closing of the purchase and sale of the Subject Business and Assets (hereinafter called the "Closing") shall occur Forty Five (45) days following the opening of escrow, provided the closing conditions set forth in Article IV herein shall have been satisfied or waived in writing as provided therein at or prior to the Closing. The date on which the Closing

Initials of Seller: _____                    Initials of Buyer:  Rm  Cm

SALE & PURCHASE AGREEMENT                                      Page 2

occurs shall be referred to in this Agreement as the "Closing Date." The Closing shall occur at the offices of the Escrow Agent or such other place as agreed to in writing between Seller and Purchaser.

<div align="center">

ARTICLE IV.

Conditions Precedent to Closing

</div>

4.01    <u>Conditions Precedent to the Buyer's Obligation to Close.</u> Buyer obligation to consummate the transaction contemplated herein is subject to the satisfaction of the following conditions:

<div style="margin-left:2em">

(a)     The representations and warranties of the Seller made in this Agreement shall be true and correct in all respects as of the date of execution hereof and as of the actual time of Closing; the Seller shall have performed, in all respects, those covenants which are required by this Agreement to be performed by Seller on or prior to the Closing.

(b)     No suit, action, investigation, inquiry or other legal or administrative proceeding which seeks to enjoin or restrict the transactions contemplated by this Agreement or questions the validity or legality of the transactions contemplated hereby or otherwise affects or has the potential of affecting the Subject Business and the Assets shall have been threatened or instituted by any governmental authority or other third person.

(c)     Buyer receives a Bill of Sale for the Assets

(d)     Buyer's review and approval of a physical inspection of the leased premises for the Subject Business and all of the contents therein;

(e)     Buyer's review and approval of all operating expenses related to the Subject Business (including all books/records, salaries, rent (NNN), etc.), Subject Business tax returns for the past two (2) years, maintenance and vendor contracts associated with the Subject Business, and any and all franchise or other agreements related to Seller's financial and business obligations to the Franchisor or any third parties ;

(f)     Buyer's review and approval of Seller's existing lease with Seller's landlord;

(g)     Buyer and Seller successfully assigning the Lease for the premises, to Buyer, under terms and conditions acceptable to Buyer;

(h)     Franchisor's review and approval of Buyer's application for a "Pump It Up" franchise transfer to Buyer at the location in which the Subject Business currently operates from, and the written approval thereof from Franchisor; and

(i)     Buyer and Seller entering into a short term "Seller Carry Back Loan" for the Subject Business and Assets as proposed in Article VIII herein and attached hereto as Exhibit __.

</div>

4.02    <u>Due Diligence Period.</u> All Conditions Precedent specified in Section 4.01 herein shall be removed by Buyer within Thirty (30) days following the opening of escrow. Should

Initials of Seller: _____                    Initials of Buyer: $Rm Cm$

SALE & PURCHASE AGREEMENT                                    Page 3

Buyer fail to notify Seller, in writing, of any objections to the Conditions Precedent specified in Section 4.01 herein, Buyer shall be deemed to have approved all of the Conditions Precedent. Upon Buyer's acceptance and/or satisfaction of all Conditions Precedent, Buyer shall immediately deposit an additional Twenty Five Thousand Dollars ($25,000.00) into escrow and the entire Fifty Thousand Dollar ($50,000.00) Deposit shall be deemed non-refundable, pass through escrow to the Seller, and become Seller's property. The entire Deposit shall be applied toward the purchase price and it shall also be deemed as the Twenty Percent (20%) down payment required for the Seller Carry Back Loan defined in Article VIII herein. Should Buyer disapprove of any of the items specified in Section 4.01 herein prior to the thirty (30) day Conditions Precedent Period, Buyer may cancel escrow and Buyer's deposit shall be refunded to Buyer, less any fees or costs incurred by escrow on Buyer's behalf.

   4.03    <u>Conditions Precedent to the Seller's Obligation to Close</u>.   Buyer obligation to consummate the transaction contemplated herein is subject to the satisfaction of the following conditions:

   (a)    The representations and warranties of the Buyer made in this Agreement will be true and correct in all respects as of the date of execution hereof and as of the actual time of Closing; the Buyer shall have performed, in all respects, those covenants which are required by this Agreement to be performed by Buyer on or prior to the Closing; and the Buyer shall have delivered a certificate, dated as of the Closing Date and signed by either the Buyer or his duly authorized agent, to the Seller, confirming the foregoing. The statements contained in the certificate shall constitute a warranty of the Buyer, which shall survive the Closing.

   (b)    No suit, action, investigation, inquiry or other legal or administrative proceeding which seeks to enjoin or restrict the transactions contemplated by this Agreement or questions the validity or legality of the transactions contemplated hereby or otherwise affects or has the potential of affecting the Subject Business and the Subject Assets shall have been threatened or instituted by any governmental authority or other third person.

   (c)    Payment of the consideration to purchase the Subject Business and the Assets as described herein, including the mutual execution of the Seller Carry Back Loan as described in Article _____.

### ARTICLE V.

### Warranties and Representations of the Seller

   The Seller warrants and represents to the Buyer, which warranties and representations will survive the Closing as follows:

Initials of Seller: _____                    Initials of Buyer: Pm Cm

SALE & PURCHASE AGREEMENT                                Page 4

5.01   Authorization.

    (a)   Carual, Inc., a California S corporation, is in good standing.

    (b)   The Seller has the power and the authority to enter into this Agreement and to consummate the transactions contemplated thereby.

    5.02   Title to and Condition of the Assets.  The Seller has good and marketable title to all of the Assets, free and clear of all liens, claims, and encumbrances.

    5.03   Taxes.  All federal, state, county and local tax returns, reports and forms of the Seller due prior to the Closing Date (including, without limitation, sales, payroll, employee withholding, social security and unemployment taxes) have been timely filed and properly reflect the tax liability of the Seller with respect to the Subject Business.  All federal, state, county and local taxes and withholding amounts that are due and payable prior to the Closing Date with respect to the Subject Business will have been paid prior to the Closing; and the Seller has made adequate provision for the payment of all federal, state, county and local taxes that are due and payable on or after the Closing Date with respect to periods ending on or prior to the Closing Date.  No tax deficiencies have been proposed or assessed against the Seller.  No tax liens have been filed and no claims have been asserted with respect to any taxes relating to the Seller or the Subject Business.

## ARTICLE VI

### Warranties and Representations of the Buyer

    6.01   Authority.  The Buyer has the power and the authority to enter into this Agreement and to consummate the transactions contemplated thereby.  The Buyer's execution and delivery of this Agreement will be deemed valid and legally binding obligations of the Buyer, enforceable against the Buyer in accordance with their respective terms.

    6.02   Brokers, Agents.  The Buyer has not dealt with any agent, finder, broker or other representative in any manner that could result in the Seller being liable for any fee or commission in the nature of a finder's fee or origination fee in connection with the sale and purchase transaction that is the subject of this Agreement, except Foster and Company.

## ARTICLE VII

### Mutual Covenants.

    The Seller and the Buyer each covenant and agree as follows:

Initials of Seller: _____          Initials of Buyer: Rm Cm

SALE & PURCHASE AGREEMENT          Page 5

7.01    Cooperation. The Buyer and the Seller, through their respective representatives, agents, employees, and accountants, shall cooperate with each other after the Closing Date to ensure the orderly transition of the Subject Business and the Subject Assets from the Seller to the Buyer and to minimize any disruption to the respective businesses of parties that might result.

7.02    Intentionally Deleted.

7.03    Publicity. The Seller and the Buyer agree that before Closing no public release or announcement concerning the transactions contemplated hereby will be issued by any party without the prior consent of the other party (which consent will not be unreasonably withheld), except any such release or announcement that may be required by law, in which case the party required to make the release or announcement shall allow the other party reasonable time to comment on such release or announcement in advance of such issuance. Subsequent to the Closing Date, only the Buyer may make a public announcement concerning the transactions contemplated hereby.

7.04    Risk of Loss. The risk of loss, damage or destruction of any of the Assets will rest with Seller before the Closing Date, and thereafter will rest with the Buyer. In the event of any loss, damage or destruction of or to any of the Assets before the Closing Date, the Seller shall take steps necessary to repair, replace, and/or restore, as the case may be, the property to its former condition; and Seller shall assign to Buyer all of its rights under any insurance and all proceeds of insurance covering such property damage, destruction or loss; and Seller shall agree to reimburse the Buyer for the difference between any insurance proceeds actually received and by the Buyer and the actual cost of repair or restoration (including replacement) of the Assets to the condition they had been in before the event causing the damage.

7.05    Sale Excluding Warranties. The Assets and F, F & E are sold "As is, Where Is, with All Faults," and no warranties are provided by Seller.

<div align="center">ARTICLE VIII.</div>

<div align="center">Seller Carry Back Loan</div>

8.01    Seller Carry Back Loan: As consideration for Buyer purchasing the Subject Business and Assets, Seller and Buyer agree to enter into a One (1) year "Interest Only" Loan in the amount of Two Hundred Thousand Dollars ($200,000.00) (hereinafter called "Loan"). The monthly "Interest Only" Loan payment shall be One Thousand Five Hundred Dollars ($1,500.00) per month. The Loan payment shall be due on the First (1st) day of each month following the Closing Date and shall be deemed late if the Loan payment is received by Seller after the Tenth (10th) day of the month. Said Loan shall be secured by the Subject Business and the Assets currently within the Premises, or that might be added to the contents within the Premises during the One (1) year Seller Carry Back Loan period. In the event that Buyer cannot pay off the Loan within the One (1) year period, Buyer shall have the right to extend the Loan maturity date for an

Initials of Seller: _____    Initials of Buyer: Rm cm

SALE & PURCHASE AGREEMENT    Page 6

additional Six (6) months (the "Extension Period"). The monthly Loan payment during the Extension Period shall be an "Interest Only" Loan payment and said Loan payment shall be Two Thousand Dollars ($2,00.00) per month. During the Extension Period the Loan payment shall be due on the first (1st) day of the month and shall be deemed late if the Loan payment is received by Seller after the Tenth (10th) day of the month. Should Buyer desire to extend the original term of the Loan, Buyer must give Seller written notice no later than Sixty (60) days prior to the maturity date of the original Loan. Any and all costs associated with the creation of the Loan shall be paid for by Buyer. All of the terms and condition of the Loan shall be included in the Promissory Note (See Exhibit __ ) that shall be fully executed by Seller and Buyer prior to the termination of the Conditions Precedent period.

## ARTICLE IX.

### General and Miscellaneous Provisions

9.01    Expenses.  The parties shall pay their own expenses incurred in connection with the negotiation and consummation of the transactions contemplated by this Agreement, including, without limitation, the fees of attorneys and accountants.

9.02    Notices.  All notices to be given under this agreement will be in writing and must be directed to a party at the address set forth below or at such other address as a party may subsequently designate. Notice may be given by means of courier, registered mail, or facsimile transmission. Where notice is transmitted by means of courier or facsimile transmission, it will be deemed effective upon the date of delivery or transmission. In the case where notice is sent by registered mail, it will be deemed effective as of the fifth business day following deposit into an authorized receptacle of the United States Postal Service. It will be the responsibility of each party to inform the other party in writing of its current address.

As to the Buyer:

Mrs. Cammy Mendes
Mr. Ray Mendes
503 Traverse drive
Costa Mesa, CA 92626

As to the Seller:

Mr. Charles Carual
Ms. Shannon Carual
24376 Brilliants Dr.
Wildomar, CA 92595

Initials of Seller: _____          Initials of Buyer: RM CM

SALE & PURCHASE AGREEMENT          Page 7

9.03    Amendment of Agreement    This Agreement may be amended at any time by mutual agreement of the parties, provided that such amendment is in writing and executed by the authorized agents or representatives of the parties. Any such amendment will be binding upon the parties as though it were part and parcel of this original Agreement.

9.04    Construction of Agreement.    California law will govern the enforceability and construction of this Agreement. The captions used in this Agreement are for convenience only. Whenever the context so requires, the masculine will include the feminine and neuter, and the singular will include the plural, and conversely..

9.05    Binding Effect    This Agreement will be binding upon and inure to the benefit of the parties and their respective executors, administrators, heirs, legal representatives, successors, assigns, and affiliates.

9.06    Waiver    The waiver by either party of any breach of this Agreement, whether in a single instance or repeatedly, will not be construed as a waiver of any rights under this Agreement against similar or additional breaches. Further, such waiver will not be construed in any manner as a waiver by either party of the need to adhere strictly to the terms and conditions of this Agreement or of any claim for damages or other remedy by reason of any such breach.

9.07    Other Instruments    The parties shall execute, acknowledge, and deliver such additional documents, writings, or assurances as may be required to comply with the terms and provisions of this Agreement.

9.08    Counterparts.    This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which taken together will be deemed to constitute a single instrument.

9.09    Prior Agreements Superseded.    Except as otherwise provided herein, this Agreement supersedes all prior understandings or written or oral agreements between the parties respecting the subject matter contained herein and reflects the entire understanding between the parties with respect to the sale of the Subject Assets and Subject Business.

9.10    Partial Invalidity/Severability    If any portion of the Agreement is held invalid or inoperative, then, so far as is reasonable and possible: (a) the remainder of this Agreement will be considered valid and operative, (b) this Agreement will be construed as if the invalid or unenforceable provisions were not present, and (c) effect will be given to the parties' intent as manifested by those portions held invalid or inoperative by the substitution of a valid and enforceable provision that is consistent with such intent.

9.11    Assignment.    Neither party may transfer or assign its rights under this Agreement without the written consent of the other party, which consent may not be unreasonably withheld.

Initials of Seller: _____                         Initials of Buyer: _BmCm_

SALE & PURCHASE AGREEMENT                                              Page 8

9.12   **Indemnification of the Buyer.**   The Seller agrees to indemnify the Buyer and its agents, employees, officers, directors, successors and assigns and to hold Buyer harmless from and against any and all liabilities, actions, claims, demands, damages, deficiencies, judgments, costs and expenses (including attorneys' and accountants' fees) to or against the Buyer resulting from (a) any misrepresentation or breach of warranty under this Agreement on the part of the Seller; (b) loss, suits, or judgments which relate to Subject Business before closing.

9.13   **Indemnification of the Seller.**   The Buyer agrees to indemnify the Seller, its agents, officers, employees, directors, successors and assigns and to hold Seller harmless from and against any and all liabilities, actions, claims, demands, damages, deficiencies, judgments, costs and expenses (including attorneys' and accountants' fees) to or against the Seller resulting from (a) any misrepresentation or breach of warranty under this Agreement on the part of the Buyer; (b) losses, claims, suits, or judgments relating to Subject Business after closing.   Any Assignee of Buyer will be bound the Terms of Indemnification, which is enforceable post closing.

9.14 **Indemnification of the Broker.**   Buyer and Seller agree to indemnify Broker and its agents, employees, officers, directors, successors and assigns and to hold Broker harmless from and against any and all liabilities, actions, claims, demands, damages, deficiencies, judgments, costs and expenses (including attorneys' and accountants' fees) to or against the Broker resulting from (a) any misrepresentation or breach of warranty or duty under this Agreement on the part of the Broker; or (b) loss, suits, or judgments which relate to Subject Business or Assets before or after the Closing.

9.15   **Procedure Relative to Indemnification.**  In the event that any party to this Agreement claims that it is entitled to be indemnified pursuant to Article IX, that party (the "Claiming Party") shall so notify the party against which the claim is made (the "Indemnifying Party") in writing of such claim within sixty (60) calendar days after receipt of a notice of such claim; provided, however, that the failure to give notice shall be made in writing, sworn to by the Claiming Party, and state, with specificity, such notice shall not affect the rights and duties of indemnification provided hereunder.

9.16   **No New Agreements:** Seller shall not enter into any new agreements or modify any existing agreements with any third party that may encumber or affect the sale of the Subject Business or the Assets in any way during the entire escrow period.

9.17   **Escrow Fees and Other Fees:** All escrow fees, as well as all other fees related to the sale/purchase of the Subject Business and the Assets shall be split between Buyer and Seller according to local customs. All costs associated with the creation and recordation of the Promissory Note for the Seller Carry Back Loan shall be paid for by Buyer.

Initials of Seller: _____                    Initials of Buyer: Rm cm

SALE & PURCHASE AGREEMENT                                    Page 9

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

9.18  <u>Broker and Broker's Commission:</u> Purchaser and Seller acknowledge that Foster & Company ("Broker") is the only Broker in this transaction and Buyer and Seller acknowledge and accept that Broker is acting as a dual agent. Seller acknowledges and agrees that Seller shall be responsible for paying Broker a commission in this transaction and said commission shall be agreed to in a separate commission agreement. Furthermore, said commission shall be paid by Seller, through escrow, on the Closing Date.

9.19  <u>Procedure Relative to Indemnification.</u> In the event that any party to this Agreement claims that it is entitled to be indemnified pursuant to Article IX, that party (the "Claiming Party") shall so notify the party against which the claim is made (the "Indemnifying Party") in writing of such claim within sixty (60) calendar days after receipt of a notice of such claim; provided, however, that the failure to give notice shall be made in writing, sworn to by the Claiming Party, and state, with specificity, such notice shall not affect the rights and duties of indemnification provided hereunder.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of date first hereinabove written.

SELLER:                                      BUYER:

Carual, Inc.                                 Cammy Mendes & Ray Mendes

_____ Date: _____             _____ Date: 8/20/18
Charles Carual                               Cammy Mendes
President

_____ Date: _____             _____ Date: 8/20/18
Shannon Carual                               Ray Mendes
Vice President

Initials of Seller: _____              Initials of Buyer: RM CM

SALE & PURCHASE AGREEMENT                    Page 10

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into by and between Camal, Inc., a California S corporation ("Seller") and Cammy Mendes and Ray Mendes ("Buyer"), on _____ 2018.

### WITNESSETH:

WHEREAS, Seller, a California corporation authorized to conduct business in California, is engaged in the business of operating a children and young adult entertainment business known as "Pump It Up" located at 11966 Jack Benny Dr., Suites 109-114, Rancho Cucamonga, CA 91739 (the "Subject Business"); and

WHEREAS, the Seller, as owner of the Subject Business and all of the Operating Assets in the Subject Business (hereinafter called "Assets"), desires to sell Subject Business and all of the Assets utilized by the Seller in connection with the Subject Business to the Buyer, and the Buyer desires to purchase the Subject Business and all of the Assets from the Seller on the terms and conditions set forth herein below; and

NOW, THEREFORE, the Seller and the Buyer, in consideration of the mutual promises and covenants hereinafter set forth, do hereby promise and agree as follows:

### ARTICLE I.

### Acquisition of Assets

1.01 __Subject Business Assets.__ Subject to the terms and conditions set forth in this Agreement, the Seller agrees to sell to the Buyer and the Buyer agrees to purchase from the Seller the Operating Assets described below:

(a) All tangible assets of every kind and description owned or used in the operation of the Subject Business, including equipment, apparatus associated with operating the Subject Business (i.e. blow up items such as slides, and platforms, etc.), leasehold improvements, fixtures, furniture, decorative accessories, exterior and interior signage (hereinafter called "F", F&E" or "Assets"). The Assets are described in Exhibit "A" attached.

(b) Seller's existing License to operate a "Pump It Up" franchise.

Initials of Seller: _____

Initials of Buyer: _____

SALE & PURCHASE AGREEMENT

Page 1

Scanned by CamScanner

## ARTICLE II.

### Purchase Price

2.01    Purchase Price. The purchase price for the Subject Business and Assets is Two Hundred Fifty Thousand Dollars ($250,000.00), (hereinafter called the "Purchase Price").

2.02    Payment of the Purchase Price.    The aggregate Purchase Price for the Subject Business and Assets shall be paid in the manner set forth as follows:

(a)    Buyer shall give Seller, through escrow, prior to the close of escrow, Fifty Thousand Dollars ($50,000.00) cash. The balance of the Purchase Price, which is Two Hundred Thousand Dollars ($200,000), shall be paid to Seller via a Seller Carry Back Loan as specified in Article VIII herein.

2.03    Payment from Escrow.    Escrow Holder/Agent shall disburse to Seller by wire transfer of immediately available funds, an amount equal to Fifty Thousand Dollars ($50,000.00) per the terms and condition specified in Article IV herein.

## ARTICLE III.

### Escrow Holder, Escrow Opening, Escrow Closing

3.01    Escrow Holder. Escrow will be placed with: Debbie Howe, The Heritage Escrow Company whose address is: 2550 Fifth Avenue, Suite 800 San Diego, CA 92103 and whose contact information is:  Phone: (619) 234-2010 Efax: (714) 481-2234 and email address is: dhowe@heritageescrow.com or bulksaleteam@heritageescrow.com (hereinafter called "Escrow Holder"). Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community, governing regulations and any reporting requirements of the Internal Revenue Code.

3.02    Escrow Opening. The opening of escrow shall occur on the date the Agreement is mutually executed by Buyer and Seller. Immediately following the opening of escrow, Buyer shall deposit Twenty Five Thousand Dollars ($25,000.00) (hereinafter called "Deposit") with the Escrow Holder. The handling of said Deposit shall be subject to the terms and conditions set forth in this Agreement.

3.03    Escrow Closing. Closing of the purchase and sale of the Subject Business and Assets (hereinafter called the "Closing") shall occur Forty Five (45) days following the opening of escrow, provided the closing conditions set forth in Article IV herein shall have been satisfied or waived in writing as provided therein at or prior to the Closing. The date on which the Closing

Initial of Seller _____    Initial of Buyer _____

SALE & PURCHASE AGREEMENT    Page 2

Scanned by CamScanner

occurs shall be referred to in this Agreement as the "Closing Date." The Closing shall occur at the offices of the Escrow Agent or such other place as agreed to in writing between Seller and Purchaser.

## ARTICLE IV.

### Conditions Precedent to Closing

4.01   Conditions Precedent to the Buyer's Obligation to Close. Buyer obligation to consummate the transaction contemplated herein is subject to the satisfaction of the following conditions:

(a)   The representations and warranties of the Seller made in this Agreement shall be true and correct in all respects as of the date of execution hereof and as of the actual time of Closing; the Seller shall have performed, in all respects, those covenants which are required by this Agreement to be performed by Seller on or prior to the Closing.

(b)   No suit, action, investigation, inquiry or other legal or administrative proceeding which seeks to enjoin or restrict the transactions contemplated by this Agreement or questions the validity or legality of the transactions contemplated hereby or otherwise affects or has the potential of affecting the Subject Business and the Assets shall have been threatened or instituted by any governmental authority or other third person.

(c)   Buyer receives a Bill of Sale for the Assets.

(d)   Buyer's review and approval of a physical inspection of the leased premises for the Subject Business and all of the contents therein;

(e)   Buyer's review and approval of all operating expenses related to the Subject Business (including all books/records, salaries, rent (NNN), etc.), Subject Business tax returns for the past two (2) years, maintenance and vendor contracts associated with the Subject Business, and any and all franchise or other agreements related to Seller's financial and business obligations to the Franchisor or any third parties ;

(f)   Buyer's review and approval of Seller's existing lease with Seller's landlord;

(g)   Buyer and Seller successfully assigning the Lease for the premises, to Buyer, under terms and conditions acceptable to Buyer;

(h)   Franchisor's review and approval of Buyer's application for a "Pump It Up" franchise transfer to Buyer at the location in which the Subject Business currently operates from, and the written approval thereof from Franchisor; and

(i)   Buyer and Seller entering into a short term "Seller Carry Back Loan" for the Subject Business and Assets as proposed in Article VIII herein and attached hereto as Exhibit ___.

4.02   Due Diligence Period. All Conditions Precedent specified in Section 4.01 herein shall be removed by Buyer within Thirty (30) days following the opening of escrow. Should

Initials of Seller: _____     Initials of Buyer: _____

SALE & PURCHASE AGREEMENT                                                PAGE 3

Scanned by CamScanner

Buyer fail to notify Seller, in writing, of any objections to the Conditions Precedent specified in Section 4.01 herein, Buyer shall be deemed to have approved all of the Conditions Precedent. Upon Buyer's acceptance and/or satisfaction of all Conditions Precedent, Buyer shall immediately deposit an additional Twenty Five Thousand Dollars ($25,000.00) into escrow and the entire Fifty Thousand Dollar ($50,000.00) Deposit shall be deemed non-refundable, pass through escrow to the Seller, and become Seller's property. The entire Deposit shall be applied toward the purchase price and it shall also be deemed as the Twenty Percent (20%) down payment required for the Seller Carry Back Loan defined in Article VIII herein. Should Buyer disapprove of any of the items specified in Section 4.01 herein prior to the thirty (30) day Conditions Precedent Period, Buyer may cancel escrow and Buyer's deposit shall be refunded to Buyer, less any fees or costs incurred by escrow on Buyer's behalf.

   4.03    Conditions Precedent to the Seller's Obligation to Close.  Buyer obligation to consummate the transaction contemplated herein is subject to the satisfaction of the following conditions:

   (a)    The representations and warranties of the Buyer made in this Agreement will be true and correct in all respects as of the date of execution hereof and as of the actual time of Closing; the Buyer shall have performed, in all respects, those covenants which are required by this Agreement to be performed by Buyer on or prior to the Closing; and the Buyer shall have delivered a certificate, dated as of the Closing Date and signed by either the Buyer or his duly authorized agent, to the Seller, confirming the foregoing.  The statements contained in the certificate shall constitute a warranty of the Buyer, which shall survive the Closing.

   (b)    No suit, action, investigation, inquiry or other legal or administrative proceeding which seeks to enjoin or restrict the transactions contemplated by this Agreement or questions the validity or legality of the transactions contemplated hereby or otherwise affects or has the potential of affecting the Subject Business and the Subject Assets shall have been threatened or instituted by any governmental authority or other third person.

   (c)    Payment of the consideration to purchase the Subject Business and the Assets as described herein, including the mutual execution of the Seller Carry Back Loan as described in Article _____.

## ARTICLE V.

### Warranties and Representations of the Seller

   The Seller warrants and represents to the Buyer, which warranties and representations will survive the Closing as follows:

Initials of Seller _____                                Initials of Buyer _____

SALE & PURCHASE AGREEMENT                                        Page 4

Scanned by CamScanner

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

5.01    Authorization.

(a)    Caruni, Inc., a California S corporation, is in good standing.

(b)    The Seller has the power and the authority to enter into this Agreement and to consummate the transactions contemplated thereby.

5.02    Title to and Condition of the Assets.  The Seller has good and marketable title to all of the Assets, free and clear of all liens, claims, and encumbrances.

5.03    Taxes.  All federal, state, county and local tax returns, reports and forms of the Seller due prior to the Closing Date (including, without limitation, sales, payroll, employee withholding, social security and unemployment taxes) have been timely filed and properly reflect the tax liability of the Seller with respect to the Subject Business. All federal, state, county and local taxes and withholding amounts that are due and payable prior to the Closing Date with respect to the Subject Business will have been paid prior to the Closing; and the Seller has made adequate provision for the payment of all federal, state, county and local taxes that are due and payable on or after the Closing Date with respect to periods ending on or prior to the Closing Date.  No tax deficiencies have been proposed or assessed against the Seller.  No tax liens have been filed and no claims have been asserted with respect to any taxes relating to the Seller or the Subject Business.

## ARTICLE VI

### Warranties and Representations of the Buyer

6.01    Authority.  The Buyer has the power and the authority to enter into this Agreement and to consummate the transactions contemplated thereby.  The Buyer's execution and delivery of this Agreement will be deemed valid and legally binding obligations of the Buyer, enforceable against the Buyer in accordance with their respective terms.

6.02    Brokers, Agents.  The Buyer has not dealt with any agent, finder, broker or other representative in any manner that could result in the Seller being liable for any fee or commission in the nature of a finder's fee or origination fee in connection with the sale and purchase transaction that is the subject of this Agreement, except Foster and Company.

## ARTICLE VII.

### Mutual Covenants.

The Seller and the Buyer each covenant and agree as follows:

Initials of Seller: _____    Initials of Buyer: _____

SALE & PURCHASE AGREEMENT    Page 5

Scanned by CamScanner

7.01 **Cooperation.** The Buyer and the Seller, through their respective representatives, agents, employees, and accountants, shall cooperate with each other after the Closing Date to ensure the orderly transition of the Subject Business and the Subject Assets from the Seller to the Buyer and to minimize any disruption to the respective businesses of parties that might result.

7.02 **Intentionally Deleted.**

7.03 **Publicity.** The Seller and the Buyer agree that before Closing no public release or announcement concerning the transactions contemplated hereby will be issued by any party without the prior consent of the other party (which consent will not be unreasonably withheld), except any such release or announcement that may be required by law, in which case the party required to make the release or announcement shall allow the other party reasonable time to comment on such release or announcement in advance of such issuance. Subsequent to the Closing Date, only the Buyer may make a public announcement concerning the transactions contemplated hereby.

7.04 **Risk of Loss.** The risk of loss, damage or destruction of any of the Assets will rest with Seller before the Closing Date, and thereafter will rest with the Buyer. In the event of any loss, damage or destruction of or to any of the Assets before the Closing Date, the Seller shall take steps necessary to repair, replace, and/or restore, as the case may be, the property to its former condition; and Seller shall assign to Buyer all of its rights under any insurance and all proceeds of insurance covering such property damage, destruction or loss; and Seller shall agree to reimburse the Buyer for the difference between any insurance proceeds actually received and by the Buyer and the actual cost of repair or restoration (including replacement) of the Assets to the condition they had been to before the event causing the damage.

7.05 **Sale Excluding Warranties.** The Assets and F, F & E are sold "As is, Where is, with All Faults," and no warranties are provided by Seller.

## ARTICLE VIII

### Seller Carry Back Loan

8.01 **Seller Carry Back Loan:** As consideration for Buyer purchasing the Subject Business and Assets, Seller and Buyer agree to enter into a One (1) year "Interest Only" Loan in the amount of Two Hundred Thousand Dollars ($200,000.00) (hereinafter called "Loan"). The monthly "Interest Only" Loan payment shall be One Thousand Five Hundred Dollars ($1,500.00) per month. The Loan payment shall be due on the First (1st) day of each month following the Closing Date and shall be deemed late if the Loan payment is received by Seller after the Tenth (10th) day of the month. Said Loan shall be secured by the Subject Business and the Assets currently within the Premises; or that might be added to the contents within the Premises during the One (1) year Seller Carry Back Loan period. In the event that Buyer cannot pay off the Loan within the One (1) year period, Buyer shall have the right to extend the Loan maturity date for an

Initials of Seller: _____    Initials of Buyer: _____

SALE & PURCHASE AGREEMENT                                           Page 6

Scanned by CamScanner

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

additional Six (6) months (the "Extension Period"). The monthly Loan payment during the Extension Period shall be an "Interest Only" Loan payment and said Loan payment shall be Two Thousand Dollars ($2,00.00) per month. During the Extension Period the Loan payment shall be due on the first (1st) day of the month and shall be deemed late if the Loan payment is received by Seller after the Tenth (10th) day of the month. Should Buyer desire to extend the original term of the Loan, Buyer must give Seller written notice no later than Sixty (60) days prior to the maturity date of the original Loan. Any and all costs associated with the creation of the Loan shall be paid for by Buyer. All of the terms and condition of the Loan shall be included in the Promissory Note (See Exhibit ___ ) that shall be fully executed by Seller and Buyer prior to the termination of the Conditions Precedent period.

### ARTICLE IX.

#### General and Miscellaneous Provisions

9.01   Expenses.   The parties shall pay their own expenses incurred in connection with the negotiation and consummation of the transactions contemplated by this Agreement, including, without limitation, the fees of attorneys and accountants.

9.02   Notices.   All notices to be given under this agreement will be in writing and must be directed to a party at the address set forth below or at such other address as a party may subsequently designate. Notice may be given by means of courier, registered mail, or facsimile transmission. Where notice is transmitted by means of courier or facsimile transmission, it will be deemed effective upon the date of delivery or transmission. In the case where notice is sent by registered mail, it will be deemed effective as of the fifth business day following deposit into an authorized receptacle of the United States Postal Service. It will be the responsibility of each party to inform the other party in writing of its current address.

As to the Buyer:

Mrs. Cammy Mendes
Mr. Ray Mendes
503 Traverse drive
Costa Mesa, CA 92626

As to the Seller:

Mr. Charles Carual
Ms. Shannon Carual
24376 Brilliants Dr.
Wildomar, CA 92595

Initials of Seller: _C.L._                           Initials of Buyer: _____

SALE & PURCHASE AGREEMENT                                            Page 7

Scanned by CamScanner

9.03    Amendment of Agreement    This Agreement may be amended at any time by mutual agreement of the parties, provided that such amendment is in writing and executed by the authorized agents or representatives of the parties. Any such amendment will be binding upon the parties as though it were part and parcel of this original Agreement.

9.04    Construction of Agreement    California law will govern the enforceability and construction of this Agreement. The captions used in this Agreement are for convenience only. Whenever the context so requires, the masculine will include the feminine and neuter, and the singular will include the plural, and conversely.

9.05    Binding Effect    This Agreement will be binding upon and inure to the benefit of the parties and their respective executors, administrators, heirs, legal representatives, successors, assigns, and affiliates.

9.06    Waiver    The waiver by either party of any breach of this Agreement, whether in a single instance or repeatedly, will not be construed as a waiver of any rights under this Agreement against similar or additional breaches. Further, such waiver will not be construed in any manner as a waiver by either party of the need to adhere strictly to the terms and conditions of this Agreement or of any claim for damages or other remedy by reason of any such breach.

9.07    Other Instruments    The parties shall execute, acknowledge, and deliver such additional documents, writings, or assurances as may be required to comply with the terms and provisions of this Agreement.

9.08    Counterparts    This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which taken together will be deemed to constitute a single instrument.

9.09    Prior Agreements Superseded.    Except as otherwise provided herein, this Agreement supersedes all prior understandings or written or oral agreements between the parties respecting the subject matter contained herein and reflects the entire understanding between the parties with respect to the sale of the Subject Assets and Subject Business.

9.10    Partial Invalidity/Severability    If any portion of the Agreement is held invalid or inoperative, then, so far as reasonable and possible: (a) the remainder of this Agreement will be considered valid and operative, (b) this Agreement will be construed as if the invalid or unenforceable provisions were not present, and (c) effect will be given to the parties' intent, as manifested, by those portions held invalid or inoperative by the substitution of a valid and enforceable provision that is consistent with such intent.

9.11    Assignment    Neither party may transfer or assign its rights under this Agreement without the written consent of the other party, which consent may not be unreasonably withheld.

Initials of Seller _____        Initials of Buyer _____

SALE & PURCHASE AGREEMENT        Page 8

Scanned by CamScanner

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

9.12 Indemnification of the Buyer. The Seller agrees to indemnify the Buyer and its agents, employees, officers, directors, successors and assigns and to hold Buyer harmless from and against any and all liabilities, actions, claims, demands, damages, deficiencies, judgments, costs and expenses (including attorneys' and accountants' fees) to or against the Buyer resulting from (a) any misrepresentation or breach of warranty under this Agreement on the part of the Seller; (b) loss, suits, or judgments which relate to Subject Business before closing.

9.13 Indemnification of the Seller. The Buyer agrees to indemnify the Seller, its agents, officers, employees, directors, successors and assigns and to hold Seller harmless from and against any and all liabilities, actions, claims, demands, damages, deficiencies, judgments, costs and expenses (including attorneys' and accountants' fees) to or against the Seller resulting from (a) any misrepresentation or breach of warranty under this Agreement on the part of the Buyer; (b) losses, claims, suits, or judgments relating to Subject Business after closing. Any Assignee of Buyer will be bound the Terms of Indemnification, which is enforceable post closing.

9.14 Indemnification of the Broker. Buyer and Seller agree to indemnify Broker and its agents, employees, officers, directors, successors and assigns and to hold Broker harmless from and against any and all liabilities, actions, claims, demands, damages, deficiencies, judgments, costs and expenses (including attorneys' and accountants' fees) to or against the Broker resulting from (a) any misrepresentation or breach of warranty or duty under this Agreement on the part of the Broker; or (b) loss, suits, or judgments which relate to Subject Business or Assets before or after the Closing.

9.15 Procedure Relative to Indemnification. In the event that any party to this Agreement claims that it is entitled to be indemnified pursuant to Article IX, that party (the "Claiming Party") shall so notify the party against which the claim is made (the "Indemnifying Party") in writing of such claim within sixty (60) calendar days after receipt of a notice of such claim; provided, however, that the failure to give notice shall be made in writing, sworn to by the Claiming Party, and state, with specificity, such notice shall not affect the rights and duties of indemnification provided hereunder.

9.16 No New Agreements: Seller shall not enter into any new agreements or modify any existing agreements with any third party that may encumber or affect the sale of the Subject Business or the Assets in any way during the entire escrow period.

9.17 Escrow Fees and Other Fees: All escrow fees, as well as all other fees related to the sale/purchase of the Subject Business and the Assets shall be split between Buyer and Seller according to local customs. All costs associated with the creation and recordation of the Promissory Note for the Seller Carry Back Loan shall be paid for by Buyer.

Initials of Seller: _____

Initials of Buyer: _____

SALE & PURCHASE AGREEMENT

Page 9

Scanned by CamScanner

9.18    Broker and Broker's Commission. Purchaser and Seller acknowledge that Foster & Company ("Broker") is the only Broker in this transaction and Buyer and Seller acknowledge and accept that Broker is acting as a dual agent. Seller acknowledges and agrees that Seller shall be responsible for paying Broker a commission in this transaction and said commission shall be agreed to in a separate commission agreement. Furthermore, said commission shall be paid by Seller, through escrow, on the Closing Date.

9.19    Procedure Relative to Indemnification. In the event that any party to this Agreement claims that it is entitled to be indemnified pursuant to Article IX, that party (the "Claiming Party") shall so notify the party against which the claim is made (the "Indemnifying Party") in writing of such claim within sixty (60) calendar days after receipt of a notice of such claim; provided, however, that the failure to give notice shall be made in writing, sworn to by the Claiming Party, and state, with specificity, such notice shall not affect the rights and duties of indemnification provided hereunder.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of date first hereinabove written.

SELLER:                                         BUYER:

Carual, Inc.                                    Cammy Mendes & Ray Mendes

_____ Date: 8/21/18                 _____ Date: _____
Charles Carual                                  Cammy Mendes
President

_____ Date: 8/21/18                 _____ Date: _____
Shannon Carual                                  Ray Mendes
Vice President

Initials of Seller _____                      Initials of Buyer _____
SALE & PURCHASE AGREEMENT

Scanned by CamScanner

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

# EXHIBIT B

## FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT

This First Amendment to Purchase and Sale Agreement ("Amendment") is entered into as of November 15, 2018, by and between Carual, Inc., a California corporation (collectively referred to as "Seller"), and 14th Century Clubhouse, Inc., a California corporation (together with its permitted assignee, if any, referred to as "Buyer").

### RECITALS

A.    Seller and Buyer entered into that certain Purchase and Sale Agreement dated August 20, 2018 (the "Contract"), for the business known as "Pump It Up" located at 11966 Jack Benny Dr., Suites 109-114, Rancho Cucamonga, CA 91739 (the "Business"). Seller and Buyer desire to further amend the Contract as provided herein.

**NOW, THEREFORE,** for and in consideration of the mutual undertakings as set forth herein, the mutual undertakings as set forth in the Purchase and Sale Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### 1. Franchise Transfer Fee

Buyer and Seller agree that Buyer and Seller shall split, on a 50/50 basis, the Ten Thousand Dollar ($10,000) "Pump It Up Franchise Transfer Fee" (hereinafter referred to as "Transfer Fee") and in doing so, Buyer and Seller agree that Seller shall pay Three Thousand Dollars ($3,000.00) of the Transfer Fee to Franchisor at the close of escrow and will agree to a reduction in the amount of the Secured Promissory Note by an amount equal to Two Thousand Dollars ($2,000.00) for a total of Five Thousand Dollars ($5,000.00) in " Seller Contribution" toward the Transfer fee.

### 2. Change in Amount of Down Payment Required by Buyer at Close of Escrow and Changes to the Terms and Conditions of the Secured Promissory Note:

Buyer and Seller agree to change the amount of the down payment that Buyer is paying Seller at the close of escrow as follows:

1.    Buyer and Seller agree that Buyer shall only be required to give Seller a down payment for the Purchase of the Pump It Up business referenced in the Purchase and Sale Agreement in an amount equal to the current deposit held by escrow, which is a total of Twenty Five Thousand Dollars ($25,000) (hereinafter called "Initial Down Payment").

2.    As a result of the decrease in the total down payment, Buyer and Seller agree that Buyer and Seller shall mutually execute a revised Secured Promissory Note that incorporates the following changes:

2.1 - The new amount of the Secured Promissory Note and Personal Guaranty of Secured Promissory Note shall be Two Hundred Twenty Three Thousand Dollars ($223,000.00).

2.2 - Buyer and Seller agree that the amount of the monthly interest only payment shall be increased Two Thousand Dollars ($2,000) per month.

**3. Additional Down Payment & Monthly Interest Only Payment Amount:**

Buyer and Seller agree that Buyer is required to make an additional principle down payment to Seller in the amount of Twenty Five Thousand Dollars ($25,000.00) (hereinafter called "Additional Down Payment") within the first Six (6) months of the term of the Secured Promissory Note. Upon Seller's receipt of the Additional Down Payment from Buyer, the monthly Interest Only payment shall be reduced to One Thousand Five Hundred Dollars ($1,500.00) per month. In the event that the Additional Down Payment has not paid to Seller by the end of the Six (6) month period, the interest only payment amount shall increase to Two Thousand Five Hundred Dollars ($2,500.00) per month and said monthly payment amount shall remain the same until the end of the One (1) year "Seller Carry Back" loan period as specified herein or until the Secured Promissory Note is paid off in full by Buyer, whichever occurs first

**4. Option To Extend The Loan Term:**

In the event that Buyer cannot pay off the Secured Promissory Note within the Twelve (12) month period specified herein, Buyer shall have the right to extend the Secured Promissory Note maturity date for an additional Six (6) month period (the "Extension Period"). The monthly Interest Only payment during the Extension Period shall be Two Thousand Dollars ($2,000.00) per month, provided that the Additional Down Payment has been paid to Buyer as specified herein, or the principle balance is less than One Hundred Ninety Eight Thousand Dollars ($198,000.000). In the event that Buyer has not paid Seller the Additional Down Payment as specified herein, the Interest Only payment shall be Two Thousand Five Dollars ($2,500.00) per month until such time as the Promissory Note is paid off in full, or the date on which this Secured Promissory Note matures.

**5. Reduction in Sale Price:**

Buyer and Seller agree that the sale price shall be reduced to Two Hundred Forty Eight Thousand Dollars ($248,000.00).

**6. Miscellaneous**

    a.   All capitalized terms not defined herein shall have the meanings ascribed to those in the original Purchase and Sale Agreement.

    b.   All other terms and provisions of the Purchase and Sale Agreement, which are not modified or amended by this Amendment, shall remain in full force and effect.

    c.   This Amendment may be executed by facsimile, by email (in ".pdf" format) any/or in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same instrument.

    d.   This Amendment and critical dates shall be effective as of the date that Michael Salazar (General Partner) and Buyer have executed this agreement. The final signatures of the limited partners shall be obtained shortly thereafter.

    e.   This Amendment may be signed in counterparts.

IN WITNESS WHEREOF, this Amendment has been entered into as of the date first set forth above.

Buyer:

Seller:

14th Century Clubhouse, Inc.,
a California corporation

Carual, Inc., a California corporation

By: _____
Name: Raymond Mendes

By: _____
Name: Charles Carual

Its: President

Its: PRESIDENT

Date: 11-15-18

Date: 11-15-18

By: _____
Name: Shannon Carual

Its: V.P.

Date: 11-15-18

3

# EXHIBIT C

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

## Secured Promissory Note

**Debtor (Debtor"):**      14th Century Clubhouse, Inc. a California corporation

503 Traverse Dr.

Costa Mesa, CA 92626


**Payee/Secured Party ("Payee"):** Carual, Inc., a California corporation

24376 Brilliants Dr.

Wildomar, CA 92595


**I.  Promise to Pay:**

Debtor agrees to pay Payee the total amount of **Two Hundred Twenty Three Thousand Dollars ($223,000.00),** which represents the balance of the amount of money owed to Payee by Debtor as a result of Debtor's purchase of Payee's PUMP IT UP business located at **11966 Jack Benny Dr., Suite 109-114, Rancho Cucamonga, CA 91739.** Payment will be delivered by Debtor to Payee at **24376 Brilliants Dr., Wildomar, CA 92595,** or other address as determined by Payee, given written notice to Debtor.

**II.  Repayment:**

The amount owed Payee by Debtor under this Secured Promissory Note will be paid to Payees by Debtor as follows:

1.  Debtor shall pay Payee the sum of **Two Thousand Dollars ($2,000.00)** per month, which represents an "Interest Only" payment against the outstanding balance due of **Two Hundred Twenty Three Thousand Dollars ($223,000,00).**

2.  The term of this Secured Promissory Note shall be for a period of **Twelve (12)** months.

3.  Said Interest Only payments shall be due on the **First (1st)** day of each month commencing on the **First (1st)** day of the **First (1st)** month immediately

<div align="center">

Secured Promissory Note                    Page 1

</div>

following the close of escrow for Debtor's purchase of **PUMP IT UP** from Payee.

4. The final Interest Only payment, along with the **$223,000.00** balance of this Secured Promissory Note shall be due and payable by Debtor to Payee on the **First (1st)** day of the **Twelfth (12th)** month following the payment of the **First (1st)** "full months" Interest Only payment made to Payee, unless this Secured Promissory Note is paid off early by Debtor, which if paid off early, is not subject to any prepayment penalty.

5. Debtor has the right to add an additional amount to the monthly **$2,000.00** Interest Only payment and said additional amount shall be applied toward the principle balance due at the end of the **Twelve (12)** month loan term.

III. **Additional Down Payment & Monthly Interest Only Payment Amount:**
Payee and Debtor agree that Debtor is required to make an additional principle payment to Payee in the amount of Twenty Five Thousand Dollars ($25,000.00) within the first Six (6) months of the term of this Secured Promissory Note. Upon Payees' receipt of the Additional Down Payment from Debtor, the monthly Interest Only payment shall be reduced to One Thousand Five Hundred Dollars ($1,500.00) per month. In the event that the Additional Down Payment is not paid to Debtor by the end of the Six (6) month period, the interest only payment amount shall increase to Two Thousand Five Hundred Dollars ($2,500.00) per month and said monthly payment amount shall remain the same until the end of the One (1) year "Seller Carry Back" loan period as specified herein or this Promissory Note is paid off in full by Debtor, whichever occurs first.

IV. **Late Payment Fees:**
If Debtor defaults by causing Payee to not receive any Interest Only payment by more than **Ten (10)** days following the date on which said Interest Only payment is due, Debtor shall pay an additional late fee to Payee in the amount of **$250.00**.

V. **Option To Extend The Loan Term:**
In the event that Debtor cannot pay off the Secured Promissory Note within the **Twelve (12)** month period specified herein, Debtor shall have the right to extend the

Secured Promissory Note maturity date for an additional **Six (6)** month period (the
"Extension Period"). The monthly Interest Only payment during the Extension Period
shall be Two Thousand Dollars ($2,000.00) per month, provided that the Additional
Down Payment has been paid to Debtor as specified herein, or the principle balance is
less than One Hundred Ninety Eight Thousand Dollars ($198,000.000). In the event
that Debtor has not paid Payee the Additional Down Payment as specified herein, the
Interest Only payment shall be Two Thousand Five Dollars ($2,500.00) per month until
such time as the Promissory Note is paid off in full, or the date on which this Secured
Promissory Note matures. Should Debtor desire to extend the term of the original
Secured Promissory Note, Debtor must give Payee written notice no later than **Sixty
(60)** days prior to the end of the maturity date of the original Secured Promissory Note
term. Should Debtor have defaulted under any of the terms and conditions specified
herein, said Option To Extend the Loan Term shall be null and void and this
Promissory Note shall be immediately due and payable.

VI. **Default:**

If Debtor defaults in any Interest Only payment by more than <u>Thirty (30)</u> days after
the time set forth herein, or in the performance of any of the terms and conditions
specified in this Secured Promissory Note, the entire outstanding sum due (principle
plus any outstanding interest) shall immediately become due and payable at the option
of the holder hereof and Payee shall have the right to exercise the rights given to
Payee herein in order to repay Debtor's debt to Payee.

VII. **Additional Costs:**

In case of a default in the payment of any principal of this Secured Promissory Note,
Debtor will pay to Payee such further amount as will be sufficient to cover the cost and
expenses of collection, including, without limitation, reasonable attorney's fees,
expenses, and disbursements. These costs will be added to the outstanding balance
and will become immediately due and payable to Payee.

**Secured Promissory Note**                           Page 3

VIII. **Transfer of the Secured Promissory Note:**

Debtor hereby waives any notice of the transfer of this Secured Promissory Note by Payee or by any subsequent holder of this Secured Promissory Note, agrees to remain bound by the terms of this Secured Promissory Note subsequent to any transfer, and agrees that the terms of this Secured Promissory Note may be fully enforced by any subsequent holder of this Secured Promissory Note.

IX. **Amendment; Modification; Waiver:**

No amendment, modification or waiver of any provision of this Secured Promissory Note or consent to departure therefrom shall be effective unless by written agreement signed by both Debtor and Payee.

X. **Security/Collateral for the Repayment of the Promissory Note:**

As a means of securing Debtors repayment of this Secured Promissory Note to Payee, Debtor hereby pledges to Payee (as collateral), Debtor's ownership interest and all assets related thereto for the **PUMP IT UP** business located at **11966 Jack Benny Dr., Suite 109-114, Rancho Cucamonga, CA 91739** and as further specified in the attached Security Agreement, which is made a part of this Security Promissory Note.

XI. **Successors:**

The terms and conditions of this Secured Promissory Note shall inure to the benefit of and be binding jointly and severally upon the successors, assigns, heirs, survivors and personal representatives of Debtor and shall inure to the benefit of any holder, its legal representatives, successors and assigns.

XII. **Breach of Promissory Note:**

No breach of any provision of this Secured Promissory Note shall be deemed waived unless it is waived in writing. No course of dealing and no delay on the part of Payee in exercising any right will operate as a waiver thereof or otherwise prejudice Payee's rights, powers, or remedies. No right, power, or remedy conferred by this Secured Promissory Note upon Payee will be exclusive of any other rights, power, or remedy referred to in this Secured Promissory Note, or now or hereafter available at law, in equity, by statute, or otherwise.

XIII. **Attorney's Fees:**

In the event that Payee retains an attorney to collect any sum due hereunder, Debtor shall pay Payee's reasonable attorney's fees, whether or not litigation is actually instituted.

XIV. **Governing Law:**

The validity, construction and performance of this Secured Promissory Note will be governed by the laws of California, excluding that body of law pertaining to conflicts of law. Debtor hereby waives presentment, notice of non-payment, notice of dishonor, protest, demand and diligence.

**Intentionally Left Blank**

Secured Promissory Note                    Page 5

The parties hereby indicate by their signatures below that they have read, understand, and agree with the terms and conditions of this Secured Promissory Note in its entirety. Furthermore, all parties warrant that they are authorized to execute this Secured Promissory Note on behalf of their respective party.

Debtor Signature: _____ Date: 11-15-18

Raymond Mendes, CEO

14th Century Clubhouse, Inc.

a California corporation

Payee Signature: _____ Date: 11-15-18

Charles Carual, President

Carual, Inc., a California corporation

Payee Signature: _____ Date: 11-15-18

Shannon Carual, Vice President

Carual, Inc., a California corporation

### Certificate of Acknowledgment of Notary Public

State of _California_ )

                                 )    ss

County of _San Diego_ )

On _November 15, 2018_, before me, _Sabrina Gang_
a notary public in and for said state, personally appeared _Charlie Carval and_
_Shannon Carval_, known to me (or proved to me on the basis of
satisfactory evidence) to be the person whose name is subscribed to the within
instrument, and acknowledged to me that he or she executed the same in his or
her authorized capacity and that by his or her signature on the instrument, the
person, or the entity upon behalf of which the person acted, executed the
Instrument.

WITNESS my hand and official seal.

_Sabrina Gang_

Notary Public for the State of _California_

My commission expires _Oct. 11, 2019_

SABRINA GANA
COMM. #2129913
Notary Public - California
San Diego County
My Comm. Expires Oct. 11, 2019

[NOTARY SEAL]

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

STATE OF    California    )SS
COUNTY OF    San Diego    )

On    november 15, 2018    before me,    Sabrina Gang    , Notary Public, personally appeared
Raymond Mendes

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature    _Sabrina Gang_

> SABRINA GANA
> COMM. #2129913
> Notary Public - California
> San Diego County
> My Comm. Expires Oct. 11, 2019

This area for official notarial seal.

### OPTIONAL SECTION - NOT PART OF NOTARY ACKNOWLEDGEMENT
### CAPACITY CLAIMED BY SIGNER

Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the
documents.

☐ INDIVIDUAL
☐ CORPORATE OFFICER(S)    TITLE(S)
☐ PARTNER(S)    ☐ LIMITED    ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER

SIGNER IS REPRESENTING:

_____    _____
Name of Person or Entity    Name of Person or Entity

### OPTIONAL SECTION - NOT PART OF NOTARY ACKNOWLEDGEMENT

Though the data requested here is not required by law, it could prevent fraudulent reattachment of this form.

**THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED BELOW**

TITLE OR TYPE OF DOCUMENT:    Note

NUMBER OF PAGES _____    DATE OF DOCUMENT _____

SIGNER(S) OTHER THAN NAMED ABOVE _____

Reproduced by First American Title Company 11/2007

# EXHIBIT D

## SECURITY AGREEMENT
(PERSONAL PROPERTY)

THIS SECURITY AGREEMENT is made this 15th day of November, 2018

by and between **14THE CENTURY CLUBHOUSE, a California corporation**

of **503 Traverse Drive Costa Mesa**, County of **Orange**, State of **CA**. (hereinafter "Debtor")

and **CARUAL INC., a California corporation**

of **24376 Brilliants Drive Wildomar**, County of **San Diego**, State of **CA** (hereinafter "Secured Party").

WITNESSETH; That Debtor hereby grants to Secured Party a security interest in all that certain personal property hereinafter to be referred to as "Security" situated and described as follows: the furniture, fixtures, equipment, stock in trade inventory, leasehold improvements, goodwill and trade name of the business, all additions, replacements attachments and accessions, including insurance settlements or proceeds, in which Debtor now or hereafter has an interest and which arise out of or relate to that certain business presently known as **PUMP IT UP** , located at **11966 Jack Benny Dr., Stes. 109-114, Rancho Cucamonga, CA 91739**, given as security for payment of a Note of even date executed by the above borrower in the amount of **$223,000.00**, according to the terms and conditions contained in said Note.

This Security Agreement also secures any and all renewals of said Note, the repayment of all sums and amounts that may be necessarily advanced or expanded by Secured Party for the maintenance or preservation of Security, or any part thereof, any and all other sums that may hereafter be advanced by Secured Party to or for the benefit of or at the insistence of Debtor and any and all other indebtednesses and obligations of Debtor to Secured Party that may hereafter be incurred.

Debtor shall keep the security in good condition and repair, and shall not remove, nor permit to be removed any part of the Security from the above premises without the prior written consent of Secured Party, first had and obtained and shall provide, maintain and deliver to Secured Party satisfactory fire and other insurance policies covering said property in amounts and with insurance companies satisfactory to Secured Party, with loss payable, if any, payable to Secured Party, as Secured Party's interest may appear.

Debtor hereby declares and warrants to Secured Party that debtor is the absolute and sole owner, and is in possession of all of the Security, and that the same is free and clear of all liens, encumbrances, adverse claims, and any other security interests.

If Debtor fails to make payment of any part of the principal or interest as provided in said promissory note at the time and in the manner therein specified, or if any breach be made of any obligation, promise or warranty of debtor herein contained or secured hereby, then the whole principal sum unpaid on said promissory note, with accrued interest thereon, shall immediately become due and payable, without notice, at the option of Secured Party, and Secured Party may at once proceed to enforce Secured Party's security interest according to law; or Secured Party may, at Secured Party's option, permission for which is hereby granted, enter upon the premises where security may be and take possession thereof, or remove, sell, lease or otherwise dispose of same, and from the proceeds of sale retain all costs and charges incurred by him in the taking or sale of said property, including reasonable attorney's fees thereby incurred; take all sums due him on said Promissory Note under any provisions hereof, including reasonable attorney's fees and any surplus of such proceeds remaining shall be paid according to law. The foregoing is without limitation to or waiver of any other rights or remedies of Secured Party according to law.

It is further agreed, subject to applicable law, that upon any sale of the Security according to law, under the power herein given, that Secured Party may bid at said sale, or purchase the security, or any part thereof at said sale.

IN WITNESS WHEREOF, Secured Party and Debtor have executed this Instrument.

DEBTOR:

14TH CENTURY CLUBHOUSE, a California
corporation

By: _____
Name: Raymond Mendes
Title: CEO/President


SECURED PARTY:

CARUAL INC., a California corporation

By: _____
Name: Shannon Carual
Title: Vice President

By: _____
Name: Charles Carual
Title: President

FURNITURE, FIXTURES, AND EQUIPMENT

For: **PUMP IT UP OF RANCHO CUCAMONGA**
Located at: **11966 Jack Benny Dr., Stes. 109-114, Rancho Cucamonga, CA 91739**
For Deposit Into Escrow: **107-038249 (B&D)**

6 inflatable jumpers

3 back up inflatable pieces

6 blowers

11 bench seating (ranging from 4-10")

2 rolling shoe cubbies

4 square tables and 16 chairs

10 Six foot picnic tables and tablecloths

2 inflatable thrones and blowers

9 six foot serving tables

4 rolling present boxes

6 TV's 5 shelving units

Special effects lighting

Sound system for arena

Sound system in party rooms

**APPROVED:**

**BUYER:**

14TH CENTURY CLUBHOUSE, a California
corporation

By: _Raymond Mendes_
Name: Raymond Mendes
Title: CEO/President

**SELLER:**

CARUAL INC., a California corporation

By: _____
Name: Shannon Carual
Title: Vice President

By: _____
Name: Charles Carual
Title: President

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

# EXHIBIT E

## Personal Guaranty of Secured Promissory Note

**WHEREAS**, Carual, Inc., a California corporation (hereinafter called "Payee") and 14th Century Clubhouse, Inc., a California Corporation, (hereinafter called "Debtor"), are about to execute a document entitled "Secured Promissory Note" dated November 15, 2018 concerning the sale of the business commonly known as Pump It Up located at 11966 Jack Benny Drive, Suite 109-114, Rancho Cucamonga, CA 91739, wherein Payee will loan to Debtor an amount equal to Two Hundred Twenty Three Thousand Dollars ($223,000.00), which represents the balance of the monies owed Payee for Debtor's purchase of the Pump It Up business referenced herein.

**WHEREAS**, Ray Mendes and Cammy Mendes hereinafter "Guarantors" have a financial interest in Debtor, and

**WHEREAS**, Payee would not execute the Secured Promissory Note if Guarantors did not execute and deliver to Payee this Guaranty of Secured Promissory Note (hereinafter called "Note").

**NOW THEREFORE**, in consideration of the execution of said Note by Payee and as a material inducement to Payee to execute said Note, Guarantors hereby jointly, severally, unconditionally, and irrevocably guarantee the prompt payment by Debtor of the sums payable by Debtor under said Note and the faithful and prompt performance by Debtor of each and every one of the terms, conditions and covenants of said Note to be kept and performed by Debtor.

It is specifically agreed by Payee and Guarantors that: (i) the terms of the foregoing Note may be modified by agreement between Payee and Debtor, or by a course of conduct, and (ii) said Note may be assigned by Payee or any assignee of Payee without the consent of or notice to Guarantors and that this Guaranty shall guarantee the performance of said Note as so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Payee to enforce any of the rights or remedies of the Payee under said Note.

No notice of default by Debtor under the Note need be given by Payee to Guarantors, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Payee may proceed immediately against Debtor and/or against Guarantors following any breach or default by Debtor or for the enforcement of any rights which Payee may have as against Debtor under the terms of the Note or at law or in equity. Payee shall have the right to proceed against Guarantors following any breach or default by Debtor under the Note without first proceeding against Debtor and without previous notice to or demand upon either Debtor or Guarantors.

Guarantors hereby waive (a) notice of acceptance of this Guaranty. (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty or the Note, (d) any right to require the Payee to proceed against the Debtor or any other Guarantor or any other person or entity liable to Payee, (e) any right to require Payee to apply to any default any security deposit or other security it may hold under the Note, (f) any right to require Payee to proceed under any other remedy Payee may have before proceeding against Guarantors, (g) any right of subrogation that Guarantors may have against Debtor.

Guarantors do hereby subordinate all existing or future indebtedness of Debtor to Guarantors to the obligations owed to Payee under the Note and this Guaranty.

If a Guarantor is married, such Guarantor expressly agrees that recourse may be had against his or her separate property for all of the obligations hereunder.

The obligations of Debtor under the Note to execute and deliver financial statements, as therein provided, shall be deemed to also require the Guarantors to provide financial statements to Payee. The failure of the Guarantors to provide the same to Payee shall constitute a default under the Note.

The term "Payee" refers to and means the Payee named in this Note and also Payee's successors and assigns.

The term "Debtor" refers to and means the Debtor named in the Note and also Debtor's successors and assigns.

Any recovery by Payee from any other guarantor or Insurer shall first be credited to the portion of Debtor's indebtedness to Payee which exceeds the maximum liability of Guarantors under this Guaranty.

No provision of this Guaranty or right of the Payee can be waived, nor can the Guarantors be released from their obligations, except in writing signed by the Payee.

Any litigation concerning this Guaranty shall be initiated in the State of California. This Guaranty shall be governed by the laws of the State of California and for the purposes of any rules regarding conflicts of law, the parties shall be treated as if they were all residents or domiciles in the State of California.

In the event any action be brought by said Payee against Guarantors hereunder to enforce the obligation of Guarantors hereunder, the unsuccessful party in such action shall pay to the prevailing party therein all reasonable attorney's fee. The attorney's fee award shall not be computed in accordance with any court fee schedule, but shall be such as to full reimburse of all attorneys' fees reasonably incurred.

BoldSign Document ID: 580f628a-f0d0-4586-b867-3b6397d2f561

If any Guarantor is a corporation, partnership, or limited liability company, each individual executing this Guaranty on said entity's behalf represents and warrants that he or she is duly authorized to execute this Guaranty on behalf of such entity.

No representation or recommendation is made by Foster & Company, or its agents, or employees as to the legal sufficiency, legal effect, or tax consequences of this Form or the transaction relating thereto.

Debtor Signature: _____ Date: 11-15-18

Raymond Mendes

SSN: _____ 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 _____

Debtor Signature: _____ Date: 11/15/18

Cammy Mendes

SSN: _____ 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 _____

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

15615 Alton Parkway, Suite 210, Irvine, California 92618

A true and correct copy of the foregoing document entitled (*specify*):

OPPOSITION TO OBJECTION TO CLAIMED EXEMPTION IN REAL PROPERTY

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __08/14/2025__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Weneta M.A. Kosmala (TR) ecf.alert+Kosmala@titlexi.com, wkosmala@txitrustee.com;dmf@txitrustee.com;sdk@txitrustee.com
United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**

On (*date*) __08/14/2025__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Gregg Roberts
43430 E Florida Ave F293
Hemet CA 92544

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __08/14/2025__, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor: Served via electronic notification on secure encrypted client portal and email. Client email address is protected by the Attorney Client Privilege.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/14/2025 | Robin Briones | /s/ Robin Briones |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**